UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
JAN 0 8 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

_____

TERRICK FICKLIN,

                  Plaintiff,

    v.

DOUGLAS RUSINKO, CARL JASON, and
KATHRYN VANDUSEN,

                  Defendants.

_____

**DECISION AND ORDER**

6:18-CV-06310 EAW

## **INTRODUCTION**

Plaintiff Terrick Ficklin ("Plaintiff") commenced this action on April 20, 2018, alleging that Parole Officers Douglas Rusinko ("P.O. Rusinko") and Carl Jason ("P.O. Jason") unlawfully arrested him and subjected him to an unwarranted and illegal body cavity search in order to obtain information about crimes unrelated to his parole status. (Dkt. 1). Plaintiff also alleges that Parole Officer Kathryn VanDusen ("P.O. VanDusen") unlawfully arrested him on a separate occasion without a warrant. (*Id.* at 15-16). Plaintiff asserts claims against P.O. Rusinko, P.O. Jason, and P.O. VanDusen (collectively, "Defendants") under the Federal and New York State Constitutions, 42 U.S.C. § 1983, the New York Civil Rights Law, and New York common law. (*Id.* at 7-17).

Presently before the Court is Defendants' motion to dismiss for failure to state a claim. (Dkt. 5). For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint unless otherwise indicated and are assumed true for purposes of this motion. (Dkt. 1). On April 22, 2015, Plaintiff, who had been released on parole supervision, received a telephone call from P.O. Rusinko, who requested information about "another person supervised" by the New York State Division of Parole (the "Division"). (*See id.* at ¶¶ 3, 10-11). At the time he received the call, Plaintiff was in a convenience store to purchase several items. (*Id.* at ¶ 10). Sataira Carter ("Carter"), Plaintiff's girlfriend, arrived at the convenience store shortly thereafter, and exited the driver's side of the vehicle to greet Plaintiff. (*Id.* at ¶¶ 13-14). Although Plaintiff "was not allowed to drive a car while he was being supervised," he entered the driver's side of the vehicle to speak with Carter inside the car. (*Id.* at ¶ 15). While Carter and Plaintiff were inside the vehicle, P.O. Jason drove up next to the car, and said, "Now you're going to jail for driving." (*Id.* at ¶¶ 16-17).

Despite Plaintiff's insistence that "the car wasn't on and he was just in the driver's side," P.O. Jason had Plaintiff exit the vehicle and then handcuffed him before placing Plaintiff in the parole car with an unidentified parole officer. (*Id.* at ¶¶ 18, 20). P.O. Rusinko drove up to the parole vehicle and said to Plaintiff, "Why the fuck you couldn't just give us the information? We would have let you go." (*Id.* at ¶¶ 22-23). Plaintiff informed the parole officers that he had to urinate before they left for the Division's Rochester office. (*Id.* at ¶¶ 21, 29). During the drive, P.O. Jason said to Plaintiff, "Why do you keep moving around back there? Are you putting drugs in your ass?" (*Id.* at ¶ 30).

After arriving at the Division's Rochester office, the parole officers brought Plaintiff into a bathroom and assisted Plaintiff to urinate while he remained handcuffed. (*Id.* at ¶¶ 34-39). P.O. Jason then stated to Plaintiff that "we got a call that you have drugs in your ass." (*Id.* at ¶ 40). Plaintiff indicated that "he did not have any drugs in his rectum," as P.O. Rusinko placed two plastic gloves over his hands and lubricated them. (*Id.* at ¶¶ 41, 43-44). P.O. Rusinko then forced his hand into Plaintiff's rectum, but he did not find any drugs. (*Id.* at ¶¶ 47-51).

After the body cavity search concluded, P.O. Jason said, "Oh, you're not going to jail," and noted that Plaintiff "should have helped us." (*Id.* at ¶¶ 57-58). P.O. Rusinko then asked Plaintiff questions about "an unrelated crime," but Plaintiff "did not answer any questions because of his emotional state." (*Id.* at ¶¶ 61-62). P.O. Rusinko helped Plaintiff urinate in the bathroom once more before driving him to the Monroe County Jail, where he was placed in custody. (*See id.* at ¶¶ 63-73, 76). During the drive, P.O. Rusinko stated, "I need the information." (*Id.* at ¶ 74).

P.O. Rusinko returned to the Monroe County Jail two days later to serve a notice of violation of release upon Plaintiff. (*Id.* at ¶ 77). At this time, Plaintiff told P.O. Rusinko "that what he did was wrong and that he was going to challenge the violation because he was sodomized." (*Id.* at ¶ 78). In response, P.O. Rusinko said, "You're really gonna go forward with this? I'm gonna make sure you get 18 months in prison." (*Id.* at ¶ 79).

Over a year later, or about August 8, 2016, Plaintiff was "stabbed . . . 20-30 times by someone alleged to be supervised by" the Division. (*Id.* at ¶ 138). At some point after the alleged stabbing took place, P.O. VanDusen arrested Plaintiff without a warrant and

before any criminal charges had been filed. (*Id.* at ¶¶ 137, 139). Plaintiff was then imprisoned until September 8, 2017. (*Id.* at ¶ 141).

## PROCEDURAL HISTORY

On April 20, 2018, Plaintiff commenced this action against Defendants, alleging various theories of liability under federal and state constitutional and statutory provisions and under New York State common law. (Dkt. 1). On June 28, 2018, Defendants moved to dismiss each cause of action in the Complaint except for Plaintiff's sixth cause of action alleging an excessive use of force claim pursuant to the Fourth Amendment. (Dkt. 5). Plaintiff opposes Defendants' motion. (Dkt. 7).

## DISCUSSION

### I.     Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.    New York Correction Law § 24

### A.    General Principles

"New York Correction Law § 24 provides that New York courts lack jurisdiction over claims for money damages brought against [the Department of Corrections and Community Supervision] and Parole officials in their personal capacities arising from conduct within the scope of their employment." *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015) (footnote omitted), *aff'd*, 879 F.3d 41 (2d Cir. 2018).  Specifically, § 24 provides, in pertinent part:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Correct. Law § 24(1).[1] Section 24(2) "requires that state law claims for damages against corrections officers 'shall be brought . . . [as] claim[s] against the state.' This provision, by its plain terms, precludes the assertion of claims against corrections officers in any court, including the federal courts." *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996).

Plaintiff's first, second, third, fifth, eighth, ninth, and eleventh causes of action allege various state law claims against Defendants. (Dkt. 1 at 7-8, 10, 15-17). Defendants argue that these claims should be dismissed for lack of subject matter jurisdiction pursuant to New York Correction Law § 24. (Dkt. 5-2 at 3-4). In response, Plaintiff argues that Defendants were not acting "within the scope of the[ir] employment and in the discharge of the[ir] duties" as parole officers. N.Y. Correct. Law § 24(1); (*see* Dkt. 7 at 3-4).

"The jurisdictional limitation of § 24 is broad, and 'immunity is not necessarily unavailable simply because the challenged conduct is violative of regulations of the Department of Correctional Services, or otherwise beyond an officer's authority.'" *Johnson v. N.Y. State Dep't of Corr. Servs. & Cmty. Supervision*, No. 11-CV-079S, 2013

---

[1] "It is of no significance that § 24(1) refers only to actions in state courts, because a federal court acts essentially as a state court in addressing pendent state law claims." *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996); *Ames v. N.Y. Dep't of Corr. & Cmty. Supervision*, No. 9:12-CV-01487 (MAD/RFT), 2015 WL 4126326, at *13 (N.D.N.Y. Mar. 24, 2015) ("It is well settled that when this Court exercises pendent jurisdiction over a state cause of action, it must apply the substantive state law. Section 24 of New York Correction Law governs substantive rights; it is not procedural." (citations omitted)); *Thomas v. Andrews*, No. 97-CV-0267E(SR), 2006 WL 2827682, at *8 (W.D.N.Y. Sept. 29, 2006) ("While the language of the statute specifies that no action may be brought in state court, this Court acts as a state court when considering a state law claim brought pursuant to the Court's supplemental jurisdiction.").

WL 5347468, at *2 (W.D.N.Y. Sept. 23, 2013) (quoting *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997)). "But the protection afforded by Section 24 is not absolute. The legislature has limited its availability to acts or omissions occurring 'within the scope of [an officer's] employment and in the discharge of [his or her] duties.'" *Ierardi*, 119 F.3d at 187 (quoting N.Y. Correct. Law § 24(1)). "In determining whether Correction Law § 24 applies, courts generally look at the factors associated with New York's scope of employment analysis." *Johnson*, 2013 WL 5347468, at *3; *see, e.g.*, *Ierardi*, 119 F.3d at 187 n.3; *Gore v. Kuhlman*, 217 A.D.2d 890, 890 (3d Dep't 1995); *Cepeda v. Coughlin*, 128 A.D.2d 995, 996 (3d Dep't 1987). These factors include:

> the connection between the time, place and occasion for the act; the history
> of the relationship between employer and employee as spelled out in actual
> practice; whether the act is one commonly done by such an employee; the
> extent of departure from normal methods of performance; and whether the
> specific act was one that the employer could reasonably have anticipated.

*Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979). "[C]onduct which occurs during the course of employment will not be considered to have occurred within the scope of employment if, for purely personal reasons unrelated to the employer's interests, the employee engages in conduct which is a substantial departure from the normal methods of performing his duties." *Gore*, 217 A.D.2d at 891. However, "an employee will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of instructions.'" *Cepeda*, 128 A.D.2d at 996 (quoting *Riviello*, 47 N.Y.2d at 302).

### B. Plaintiff's First, Second, Third, Fifth, Eighth, Ninth, and Eleventh Causes of Action are Dismissed

#### 1. P.O. Rusinko and P.O. Jason

Plaintiff's first, second, third, fifth, and eighth causes of action allege common law claims for intentional infliction of emotional distress, assault, and battery, as well as state law claims under Article I, Section 12 of the New York State Constitution, Section 23 of the New York Civil Rights Law, and Article I, Section 5 of the New York State Constitution, respectively. (Dkt. 1 at 7-8, 10, 15). These claims relate to P.O. Jason's allegedly unlawful seizure of Plaintiff outside the convenience store, and the allegedly unlawful body cavity search performed by P.O. Rusinko. Although Plaintiff argues that "[t]he complaint never states that Defendants were acting within the scope of their employment or in their official capacity" (Dkt. 7 at ¶ 14), this argument overlooks how the salient facts fit within the *Riviello* factors. The allegations in the Complaint demonstrate that P.O. Jason and P.O. Rusinko were parole officers and Plaintiff was under parole supervision; P.O. Jason arrested Plaintiff contending that he was in violation of his parole conditions prohibiting Plaintiff from operating a car; and P.O. Rusinko performed the body cavity search at the Division's Rochester office. As discussed in greater detail below, these actions clearly fall within the scope of P.O. Jason's and P.O. Rusinko's employment as parole officers, "no matter how irregularly, or with what disregard of instructions," they might have occurred. *See Cepeda*, 128 A.D.2d at 996 (quoting *Riviello*, 47 N.Y.2d at 302).

"A parolee is in the legal custody of a parole officer who monitors the parolee's adherence to the conditions of his or her parole." *United States v. Thomas*, 729 F.2d 120,

123 (2d Cir. 1984). A parole officer must prevent "behavior that is deemed dangerous to the restoration of the individual into normal society" and "guide the parolee into constructive development." *Morrissey v. Brewer*, 408 U.S. 471, 478 (1972). "[P]arole officers have a duty 'to investigate whether a parolee is violating the conditions of his parole, . . . one of which, of course, is that the parolee commit no further crimes.'" *United States v. Barner*, 666 F.3d 79, 85 (2d Cir. 2012) (quoting *United States v. Reyes*, 283 F.3d 446, 459 (2d Cir. 2002)); *see Rivera v. Madan*, No. 10 Civ. 4136 (PGG), 2013 WL 4860116, at *5 (S.D.N.Y. Sept. 12, 2013) ("[T]he Second Circuit has repeatedly acknowledged that when parole officers have received information that a parolee may have violated parole conditions, the '[p]arole officers have a duty to investigate. . . .'" (quoting *Barner*, 666 F.3d at 85)). "To ensure that the conditions of parole are not being violated and to monitor the parolee's progress of reintegration into society, a parole officer, of necessity, must have investigative powers to gather information about the parolee's activities, environment and social contacts." *Thomas*, 729 F.2d at 123. "Often such information can only be obtained by activities like searches that invade the privacy of the parolee to an extent that 'would be unlawful if directed against an ordinary citizen.'" *Id.* (quoting *United States ex rel. Santos v. N.Y. State Bd. of Parole*, 441 F.2d 1216, 1218 (2d Cir. 1971)).

Plaintiff alleges that he was initially detained by P.O. Jason after having been found seated in the driver's seat of Carter's vehicle. (Dkt. 1 at ¶¶ 15-17, 20). Plaintiff was not allowed to drive a vehicle while under parole supervision. (*Id.* at ¶ 15). Plaintiff also alleges that P.O. Jason later informed him that the parole officers had received a phone call

suggesting that Plaintiff was hiding drugs in his anal cavity. (*Id.* at ¶ 40). P.O. Rusinko then performed a body cavity search while Plaintiff was in custody at the Division's Rochester office. (*See id.* at ¶¶ 41-51). Plaintiff claims that P.O. Rusinko and P.O. Jason performed these actions without a warrant. (*See id.* at ¶ 116).

Plaintiff's allegations describe actions commonly required of parole officers in discharging their duty of ensuring a parolee's compliance with his conditions of release. The arrest took place almost immediately after P.O. Jason observed Plaintiff in the driver's seat of Carter's vehicle, suggesting that Plaintiff was presently in violation of his parole conditions or was preparing to engage in violative conduct shortly thereafter. Parole officers are authorized to arrest parolees where there is reasonable cause to believe that a violation of parole supervision has occurred and a warrant has been issued. *See People ex rel. Wells v. DeMarco*, __ A.D.3d __, 2018 WL 5931308, at *6 (2d Dep't Nov. 14, 2018) ("The Executive Law allows for parole violation arrest warrants to be issued by a member of the parole board or its designee where a parole officer reports there is reasonable cause to believe an individual's terms of parole have been violated." (citing N.Y. Executive Law § 259-i(3)(a)(i))); *see also Parker v. N.Y. State Div. of Parole*, No. 04 Civ. 3901 (TPG), 2012 WL 1059367, at *3 (S.D.N.Y. Mar. 28, 2012) (noting that "the parolee may be arrested[] by any parole officer, police officer, or any other officer authorized to serve criminal process" (citing N.Y. Executive Law § 259-i(3)(a)(ii))). As such, the Division could reasonably anticipate that one of its officers would arrest a parolee if the parolee was observed engaging in conduct that created a reasonable cause to believe he had violated his parole conditions. Whether or not P.O. Jason's arrest was supported by a warrant and was

otherwise constitutional is an issue the Court need not and does not address in this decision because the alleged conduct need not be constitutionally permissible in order to fall within § 24's scope of employment analysis. *See Crump v. Ekpe*, No. 9:07-CV-1331 (LEK/DEP), 2010 WL 502762, at *18 (N.D.N.Y. Feb. 8, 2010) ("While they may allege constitutional deprivations and actions exceeding the scope of a corrections officer's authority, these types of claims have consistently been treated as giving rise to immunity from suit for pendent state law claims against corrections officers in their individual capacities, whether in state or federal court."); *Heyliger v. Gebler*, 496 F. Supp. 2d 250, 253 (W.D.N.Y. 2007) (dismissing the state law claims because the alleged acts, "even if violative of plaintiff's constitutional rights, were clearly done within the scope of defendants' employment"); *see also Gore*, 217 A.D.2d at 891 ("That defendants abused their authority as plaintiff's supervisors for the purpose of harassment, as alleged by plaintiff, constitutes no more of a departure from the normal methods of performing the duties of employment than a correction officer's use of excessive force to quell an inmate disturbance, resulting in an assault. . . ."); *Cepeda*, 128 A.D.2d at 996 ("While the use of excessive force against inmates is prohibited by statute, in actuality, physical force is often required and used to control inmates." (citation omitted)); *cf. Ierardi*, 119 F.3d at 188 ("In contrast, Sisco's purported sexual harassment of Ierardi was not undertaken in the discharge of his duties. He was not 'doing [his] employer's work.'" (quoting *Gore*, 217 A.D.2d at 890)).

Furthermore, according to Plaintiff's allegations, the body cavity search occurred after P.O. Jason had allegedly received information that Plaintiff was hiding drugs in his anal cavity. The search took place while Plaintiff was being held in custody within the

Division's offices, where it could be reasonably expected that a parolee would be searched. *See also Ames*, 2015 WL 4126326, at *14 (stating that the alleged "inappropriate filing of misconduct reports and [the] excessive use of force during the movement of [the p]laintiff within the facility . . . [is] generally foreseeable in the execution of [the d]efendant Correction Officers' duties"); *Degrafinreid v. Ricks*, 452 F. Supp. 2d 328, 333-34 (S.D.N.Y. 2006) ("Frisking inmates and searching their cells for contraband are essential aspects of 'the maintenance of prison safety' and as such are among the 'primary duties and responsibilities of corrections officers.'" (quoting *Cepeda*, 128 A.D.2d at 997)); *see generally Thomas*, 729 F.2d at 124 ("The expectation of privacy of a parolee in a parole officer's office would be at its lowest ebb.").

Certainly, "[a] body cavity search is 'by its very nature a highly intrusive invasion [of privacy].'" *Rivera*, 2013 WL 4860116, at *6 (quoting *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991)); *see Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986) (characterizing a "strip/body cavity search" as "intrusive and demeaning"); *Chaney v. Vena*, No. 9:15-CV-653 (TJM/ATB), 2018 WL 4290455, at *5 (N.D.N.Y. May 21, 2018) ("[I]t is well-established in the Supreme Court, the Second Circuit, and the District Courts that a body cavity search is intrusive and may only be conducted if the proper circumstances exist."), *report and recommendation adopted*, 2018 WL 4288621 (N.D.N.Y. Sept. 7, 2018). Nonetheless, even highly intrusive searches such as these are properly performed by parole officers in carrying out their duties when the circumstances are appropriate. *See, e.g., Rivera*, 2013 WL 4860116, at *6 ("Construing these facts in the light most favorable to [the p]laintiff, [the d]efendants' search of Rivera's body cavity was

'rationally and reasonably related to the performance of the parole officer's duty.'" (quoting *Barner*, 666 F.3d at 85)).

To be clear, the Court does not opine upon the propriety of P.O. Rusinko's and P.O. Jason's alleged actions. Whether or not P.O. Rusinko and P.O. Jason have violated Plaintiff's constitutional rights or otherwise acted inappropriately does not determine whether their conduct falls within the scope of § 24 for purposes of defining this Court's jurisdiction. *See, e.g., Crump*, 2010 WL 502762, at *18; *Heyliger*, 496 F. Supp. 2d at 253; *Gore*, 217 A.D.2d at 891; *Cepeda*, 128 A.D.2d at 996. Since only the "'New York State Court of Claims has proper jurisdiction to hear Plaintiff's state law claims because he has alleged acts that clearly fall within the scope of [P.O. Rusinko's and P.O. Jason's] employment duties,' the Court is obligated to dismiss those claims for lack of subject matter jurisdiction." *Aponte v. Fischer*, No. 14-CV-3989 (KMK), 2018 WL 1136614, at *11 (S.D.N.Y. Feb. 28, 2018) (quoting *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *12 n.8 (S.D.N.Y. Sept. 30, 2015)); *see Tavares v. N.Y.C. Health & Hosps. Corp.*, No. 13-CV-3148 (PKC) (MHD), 2015 WL 158863, at *10 (S.D.N.Y. Jan. 13, 2015) ("State-law claims for damages against [Department of Corrections and Community Supervision] employees within the scope of their employment must be brought in the New York Court of Claims as claims against New York State."). Accordingly, Plaintiff's first, second, third, fifth, and eighth causes of action are dismissed pursuant to Correction Law § 24.[2]

---

[2] Although not discussed by the parties, the Court notes that "[t]he Supreme Court has . . . held that insofar as § 24 relegates prison inmates' § 1983 claims to the New York

## 2. P.O. VanDusen

Plaintiff's ninth cause of action alleges a common law claim for false arrest and his eleventh cause of action alleges a claim pursuant to Article I, Section 12 of the New York State Constitution. (Dkt. 1 at 15-17). Both claims arise out of events allegedly taking place on or about August 8, 2016. Plaintiff alleges that he was stabbed "20-30 times by someone alleged to be supervised by the" Division at some point that day and was then arrested by P.O. VanDusen shortly thereafter. (*Id.* at ¶¶ 137-38). Plaintiff claims that the arrest was executed without a warrant in violation of his rights. (*Id.* at ¶¶ 140, 151-53). However,

---

Court of Claims, it is inconsistent with the Supremacy Clause and, thus, unconstitutional." *DeLee v. White*, No. 09-CV-00838A F, 2011 WL 7415124, at *18 (W.D.N.Y. Nov. 15, 2011) (citing *Haywood v. Drown*, 556 U.S. 729, 739-742 (2009)), *report and recommendation adopted*, No. 09-CV-838, 2012 WL 590858 (W.D.N.Y. Feb. 22, 2012), *aff'd sub nom. Delee v. Hannigan*, 729 F. App'x 25 (2d Cir. 2018). Nonetheless, while *Haywood* "found section 24 to be in violation of the Supremacy Clause, it did so only with respect to claims brought under section 1983—a federal statute." *Joy v. New York*, No. 5:09-CV-841 (FJS) (ATB), 2010 WL 3909694, at *4 (N.D.N.Y. Sept. 30, 2010). "The Supreme Court, however did not hold that N.Y. Corr. § 24 is unconstitutional in its bar of state claims in state courts; it only held that state courts must be open to § 1983 federal claims." *Blanche v. Pirelli*, No. 08 Civ. 4752 (RJH), 2009 WL 2499737, at *8 (S.D.N.Y. Aug. 7, 2009); *see Colon v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15 Civ. 7432 (NSR), 2017 WL 4157372, at *8 (S.D.N.Y. Sept. 15, 2017) ("Even after the Supreme Court's decision in *Haywood v. Drown*[,] . . . § 24 continues to bar state law claims against [Department of Corrections and Community Supervision] officers that are not brought to the Court of Claims unless the individuals acted outside their scope of employment."); *Brown v. Dep't of Corr. Servs.*, No. 09-CV-00949S F, 2011 WL 2182775, at *8 (W.D.N.Y. June 2, 2011) ("Although the Supreme Court held § 24 unconstitutional insofar as it barred federal § 1983 claims in state court, the issue in the instant case, i.e., whether § 24 precludes [the p]laintiff's proposed New York common law claims in this court, was not before the Supreme Court in *Haywood* and, thus, was not addressed."). Thus, while § 24 "is not a bar to claims against corrections officers and employees under § 1983," *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013), *Haywood* does not preclude the application of § 24 to Plaintiff's state law claims.

"the conduct, as alleged in the complaint, does not fall outside of the scope of [the d]efendant's employment with" the Division under the *Riviello* analysis. *See Francis v. Fiacco*, No. 9:15-CV-00901 (MAD/ATB), 2016 WL 3448617, at *4 (N.D.N.Y. June 20, 2016). There is no indication within the Complaint that P.O. VanDusen was not otherwise performing her work as a parole officer during scheduled working hours. *See Delee v. Hannigan*, No. 09-CV-838-FPG, 2016 WL 5529382, at *5 (W.D.N.Y. Sept. 30, 2016) (considering that the corrections officer "was at work, during his scheduled work hours" in determining whether he was "acting within the scope of his employment"), *aff'd*, 729 F. App'x 25 (2d Cir. 2018). The plain implication from Plaintiff's allegations is that P.O. VanDusen arrested Plaintiff while working as a parole officer. If Plaintiff was involved in a physical confrontation with another individual and was stabbed "20-30 times," it would not be unexpected for a parole officer to investigate the circumstances of the encounter to determine his compliance with the conditions of his release. In other words, it is not unforeseeable that a parole officer would arrest a parolee after learning he had been embroiled in a violent altercation.

As discussed above, parole officers are empowered to arrest a parolee after a warrant has been issued, and when they have reasonable cause to believe that a violation of the parolee's conditions of release has occurred. *See, e.g., Parker*, 2012 WL 1059367, at *3; *Wells*, 2018 WL 5931308, at *6. The New York Court of Appeals has held that parole officers are not vested "with the power to make warrantless arrests for parole violations even if committed in their presence," and that "[a] member of the [New York State Parole Board] or a designated officer of the Division must issue a warrant." *People v. Bratton*, 8

N.Y.3d 637, 641 (2007). However, as with P.O. Rusinko and P.O. Jason, whether or not P.O. VanDusen acted without authority in making the arrest is not determinative of whether she acted outside the scope of her employment and her duties as a parole officer. *See Ierardi*, 119 F.3d at 187 (noting that § 24 "is not necessarily unavailable simply because the challenged conduct is violative of regulations . . . or otherwise beyond an officer's authority"); *Reeder v. Artus*, No. 09-CV-575 DNH/DRH, 2010 WL 3636138, at *12 (N.D.N.Y. July 27, 2010) (applying § 24 where the plaintiff sought damages arising from the alleged "unlawful confiscation and destruction of his personal property" without due process of law), *report and recommendation adopted*, No. 9:09-CV-0575, 2010 WL 3636132 (N.D.N.Y. Sept. 9, 2010); *see e.g.*, *Crump*, 2010 WL 502762, at *18; *Heyliger*, 496 F. Supp. 2d at 253. The fact that P.O. VanDusen was "functioning as [a] parole officer[] during [her] interaction" with Plaintiff requires the dismissal of his state law claim for false arrest even if she "abused [her] office[] and otherwise violated [Plaintiff's] rights during their interaction." *Sloane v. Getz*, No. 00 CIV. 4708 (DLC), 2001 WL 504879, at *5 (S.D.N.Y. May 10, 2001).[3] In other words, "[a]lthough [P.O. VanDusen] may have

---

[3]     Although *Sloane* relied upon New York Executive Law § 259-q, "which applies to employees of the State Division of Parole," *see* 2001 WL 504879, at *4 n.1, it is notable that New York Correction Law § 24 was amended in 2011 to clarify that "any officer or employee of the department . . . include[s] members of the state board of parole." Budgets—Fin. Servs., 2011 Sess. Law News of N.Y. Ch. 62 (S. 2812-C); *see Hassell*, 96 F. Supp. 3d at 385 (applying § 24 to parole officers). In any event, courts in this Circuit have interpreted both statutes analogously. *See Sloane*, 2001 WL 504879, at *5 ("There is no reason to interpret Section 259-q differently from Section 24 with respect to immunity from suit."); *see also Oliver v. Cuttler*, 968 F. Supp. 83, 90 (E.D.N.Y. 1997) (noting that Section 259-q is "word for word[] identical" to Correction Law § 24, "with the exception that [§ 24] applies to correctional officers rather than parole officers").

violated Plaintiff's constitutional rights, [s]he was undoubtedly 'doing h[er] employer's work' when [s]he did so." *Delee v. Hannigan*, No. 09-CV-838-FPG, 2016 WL 5529382, at *5 (W.D.N.Y. Sept. 30, 2016), *aff'd*, 729 F. App'x 25 (2d Cir. 2018); *cf. Ozzborn v. New York*, No. 9:17-CV-1039 (MAD/ATB), 2018 WL 3104448, at *5 (N.D.N.Y. June 22, 2018) (finding § 24 to be unavailable where the plaintiff's false arrest claim alleged that the defendant "intentionally planted a weapon" on him, and where the defendant's "actions against [the p]laintiff were motivated by his desire to settle a dispute between the two").

Therefore, since Plaintiff's allegations fail to demonstrate that P.O. VanDusen was not "doing [her] employer's work" at the time she arrested Plaintiff, *Gore*, 217 A.D.2d at 890, Plaintiff's ninth and eleventh causes of action are dismissed pursuant to Correction Law § 24, *see, e.g., Aponte*, 2018 WL 1136614, at *11; *Tavares*, 2015 WL 158863, at *10.

## C.    Plaintiff's Fourth Cause of Action for Abuse of Process

Defendants also seek to dismiss Plaintiff's fourth cause of action for abuse of process pursuant to Correction Law § 24. (*See* Dkt. 5-2 at 3-4). In response, Plaintiff has suggested that this cause of action "is a federal constitutional claim and not specifically pled as a New York State claim." (Dkt. 7 at ¶ 16).[4] The Court notes that Plaintiff failed to

---

[4]    To the extent this cause of action is also framed as a state law abuse of process claim against P.O. Jason and P.O. Rusinko, it is dismissed pursuant to Correction Law § 24 for the same reasons discussed in the preceding section. The fact that Plaintiff further alleges that P.O. Rusinko also improperly used the parole revocation process by threatening Plaintiff with 18 months' imprisonment in order to dissuade Plaintiff from challenging the parole violation does not remove P.O. Rusinko's conduct from the scope of his employment. It is the duty of a parole officer to ensure a parolee's compliance with his conditions of release and to initiate the process by which any alleged parole violation is reviewed. Indeed, P.O. Rusinko brought the notice of violation to serve upon Plaintiff before ever having made the alleged threat. (*See* Dkt. 1 at ¶ 77). In other words, the parole

expressly reference any specific constitutional violation in his fourth cause of action. (*See*

Dkt. 1 at 8-10). Nonetheless, while Plaintiff "did not allege that [he was] denied any federal

right—a prerequisite to asserting a claim under section 1983"—the Second Circuit has

"said that where the process alleged to have been abused is criminal in nature, an

adequately pled claim for malicious abuse of process is 'by definition a denial of procedural

due process.'" *Peter L. Hoffman, Lotte, LLC v. Town of Southampton*, 523 F. App'x 770,

771 (2d Cir. 2013) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)); *see Allen v.*

*Antal*, No. 12 Civ. 8024 (NSR), 2014 WL 2526977, at *15 (S.D.N.Y. Mar. 13, 2014)

---

revocation process had already commenced prior to P.O. Rusinko's and Plaintiff's
exchange. That P.O. Rusinko may have suggested he would pursue his duties more
vigorously is immaterial. *See generally Johnson*, 2013 WL 5347468, at *3 (applying
Correction Law § 24 to acts allegedly "carried out and condoned by [the plaintiff's]
supervisors as part of a pattern of discrimination and retaliation"). The New York "Court
of Appeals has instructed that an employee will be considered within the scope of his
employment so long as he is discharging his duties, 'no matter how irregularly, or with
what disregard of instructions.'" *Cepeda*, 128 A.D.2d at 996 (quoting *Riviello*, 47 N.Y.2d
at 302). Furthermore, Plaintiff has set forth no allegations from which the Court could
plausibly infer that P.O. Rusinko acted unlawfully to maliciously interfere with the
prosecution of Plaintiff's parole violation or that he "was prompted purely by 'personal
reasons unrelated to the employer's interest.'" *Cf. Ierardi*, 119 F.3d at 188 (quoting *Gore*,
217 A.D.2d at 890); *Livingston v. Griffin*, No. 9:04-CV-00607-JKS, 2007 WL 2437433, at
*3 (N.D.N.Y. Aug. 22, 2007) (finding Correction Law § 24 inapplicable where the
corrections officers knowingly and intentionally provided the plaintiff with "food
adulterated with drugs"). Regardless of whether the comment was appropriate, P.O.
Rusinko performed "his employer's work" by serving the notice of violation on Plaintiff
and pursuing those violations. *See generally Francis*, 2016 WL 3448617, at *4 ("[T]he
conduct, as alleged in the complaint, does not fall outside of the scope of [the d]efendant's
employment with [the Department of Corrections and Community Supervision] under this
analysis."); *Flynn v. Ward*, No. 9:15-CV-1028 (GLS/CFH), 2015 WL 8056060, at *6
(N.D.N.Y. Dec. 4, 2015) ("The complaint lacks any facts to plausibly suggest that
defendants acted outside the scope of their employment."). Thus, insofar as Plaintiff's
fourth cause of action asserts a claim for abuse of process under New York law, it too is
dismissed pursuant to § 24.

(same), *aff'd*, 665 F. App'x 9 (2d Cir. 2016); *see also Burdick v. Oswego County*, No. 5:12-CV-1711 (NAM/DEP), 2014 WL 12781320, at *12 (N.D.N.Y. Mar. 31, 2014) (stating that "malicious abuse of criminal process constitutes a deprivation of a constitutional right"); *Jovanovic v. City of New York*, No. 04 Civ.8437 (PAC), 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006) ("If [the p]laintiff is able to provide additional facts to support his abuse of process claim, then he will have adequately alleged the violation of his constitutional right to be free from malicious abuse of process, as guaranteed by the Fourteenth Amendment's procedural due process clause."), *on reconsideration in part*, 2008 WL 355515 (S.D.N.Y. Feb. 7, 2008); *Dickerson v. Monroe Cty. Sheriff's Dep't*, 114 F. Supp. 2d 187, 192 (W.D.N.Y. 2000) (stating that a malicious abuse of criminal process claim "is of a constitutional nature"). As such, the Court will construe the fourth cause of action as a § 1983 claim.

Defendants have presented no argument specifically addressing whether Plaintiff has alleged a § 1983 cause of action for malicious abuse of criminal process. "When a plaintiff asserts an abuse-of-process claim under Section 1983, '[the Second Circuit has] turn[ed] to state law to find the elements'—in this case, New York State law." *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 n.5 (2d Cir. 2015) (quoting *Cook*, 41 F.3d at 80); *see Savino v. City of New York*, 331 F.3d 63, 76-77 (2d Cir. 2003) (citing New York State decisional law in analyzing a claim for abuse of process under § 1983).

> Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."

*Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (quoting *Cook*, 41 F.3d at 80).

The Complaint alleges that P.O. Rusinko and P.O. Jason intentionally abused the parole arrest process and search procedure "to dehumanize [Plaintiff] and break him down emotionally to pressure him into giving information on an unrelated case." (Dkt. 1 at ¶ 103). "An arrest may constitute legal process for the purposes of a malicious abuse of process claim." *Rao v. City of New York*, No. 14-CV-7422 (RRM) (LB), 2018 WL 1582289, at *8 (E.D.N.Y. Mar. 29, 2018); *see Crockett v. City of New York*, No. 11-CV-4378 (PKC), 2015 WL 5719737, at *10 (E.D.N.Y. Sept. 29, 2015) ("[N]umerous courts have found the issuance-of-legal-process element met by an officer's arrest of, or issuance of tickets to, a plaintiff, so long as the issuance was 'for a collateral objective outside the legitimate ends of process.'" (quoting *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 231 (E.D.N.Y. 2010), *on reconsideration in part*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011))). As such, Plaintiff has adequately pled the first element of this claim.

However, "[i]n order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action," and not simply a malicious *motive*. *Savino*, 331 F.3d at 77; *see Rao*, 2018 WL 1582289, at *8 ("The case law distinguishes between a malicious motive and an improper purpose. The former, by itself, is insufficient to state a claim of abuse of process; the plaintiff must also allege that the defendant acted primarily to achieve an improper objective."); *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) ("A malicious motive alone . . . does not give rise to a cause of

action for abuse of process."). "In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution." *Abreu v. Romero*, No. 08 Civ. 10129 (LAP), 2010 WL 4615879, at \*8 (S.D.N.Y. Nov. 9, 2010) (citing *Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 404 (1975)), *aff'd*, 466 F. App'x 24 (2d Cir. 2012). As noted above, "[a] parole officer's function is twofold: 'to guide the parolee into constructive development' and to prevent 'behavior that is deemed dangerous to the restoration of the individual into normal society.'" *Thomas*, 729 F.2d at 123 (quoting *Morrissey*, 408 U.S. at 478). A parole officer's investigatory powers to gather information about the parolee are intended to ensure compliance with the parolee's conditions of parole, *see id.*, and are not intended to acquire information about criminal conduct unrelated to the parolee.

Plaintiff has alleged that P.O. Rusinko and P.O Jason utilized their authority to arrest Plaintiff and to search his person to cause Plaintiff emotional and physical trauma in order to secure information about crimes unrelated to Plaintiff's parole status. While admittedly a close call, at least at the motion to dismiss stage of this proceeding, and particularly with no opposition by Defendants addressed to these claims under § 1983, the Court finds that Plaintiff has sufficiently alleged a cause of action for malicious abuse of criminal process. Indeed, courts have permitted abuse of process claims to proceed where the plaintiff has alleged that the process was used to influence a separate transaction or proceeding. *See Rao*, 2018 WL 1582289, at \*8 ("Courts have permitted abuse of process claims to go forward where, for example, the defendant allegedly arranged for the plaintiff to be arrested

- 21 -

for trespassing in order to influence a separate contract dispute." (citing *TADCO Constr. Corp. v. Dormitory Auth. of State of N.Y.*, 700 F. Supp. 2d 253, 272 (E.D.N.Y. 2010))); *Pinter v. City of New York*, 976 F. Supp. 2d 539, 569 (S.D.N.Y. 2013) (finding that "[t]he use of prostitution arrests for leverage in negotiations over nuisance abatements" was evidence of an improper purpose). Again, the Court notes that while Defendants reserved the right to submit reply papers in their notice of motion (Dkt. 5), they elected not to file any additional submissions articulating why Plaintiff's fourth cause of action should be dismissed even if construed as a federal § 1983 claim. Accordingly, since it appears that Plaintiff has adequately alleged a § 1983 abuse of process claim, and in the absence of any arguments to the contrary by Defendants, Defendants' motion to dismiss is denied as it pertains to the fourth cause of action insofar as Plaintiff has alleged a § 1983 claim for malicious abuse of criminal process.

## III.    Plaintiff's Tenth Cause of Action is Dismissed Due to Issue Preclusion

Defendants argue that the tenth cause of action alleging a § 1983 unlawful arrest claim should be dismissed under the rule articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994), or under the principles of claim and issue preclusion. (Dkt. 5-2 at 5-7). In doing so, Defendants rely upon Plaintiff's 2016 parole revocation and habeas corpus proceedings, as well as a decision and order issued by Monroe County Court Judge Vincent M. Dinolfo, on October 11, 2016, which denied Plaintiff's petition for a writ of habeas corpus and purportedly "addresses all the issues currently before the Court." (*Id.* at 7). Because the application of *res judicata* or collateral estoppel would require Plaintiff's claim to be dismissed with prejudice, the Court addresses those arguments first.

## A. The Doctrine of *Res Judicata* is Not Applicable

"In a federal § 1983 suit, the same preclusive effect is given to a previous state court proceeding as would be given to that proceeding in the courts of the State in which the judgment was rendered." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999). "*Res judicata* precludes parties from relitigating claims both actually litigated or which could have been litigated in a prior proceeding." *Taylor v. Brentwood Union Free Sch. Dist.*, 908 F. Supp. 1165, 1178 (E.D.N.Y. 1995). "Res judicata, or claim preclusion, means that 'even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence.'" *Burton v. Niagara Frontier Transp. Auth.*, No. 11-CV-00971, 2013 WL 3423754, at *2 (W.D.N.Y. July 8, 2013) (quoting *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d. Cir. 1999)). However, "under New York law, the form of relief being sought is an element of the litigant's claim." *Leather*, 180 F.3d at 425.

"[T]he Second Circuit has repeatedly held that *res judicata* does not bar a plaintiff who has secured relief in a limited state proceeding from later seeking damages that were unavailable in the prior proceeding." *Barrington v. New York*, 806 F. Supp. 2d 730, 741 (S.D.N.Y. 2011).

> A review of the statute and case law . . . shows that a New York State court determining a petition for habeas relief does not have the authority to award damages to the petitioner. The nature of a habeas petition—which is directed to those detaining or restraining the individual, not necessarily to those who committed the alleged wrong leading to the wrongful detention—simply does not lend itself to the imposition of damages.

*Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994); *see also Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) ("Although New York courts have not fully articulated a

comprehensive test for determining when in an Article 78 proceeding damages can be properly characterized as incidental to the primary relief sought, substantial New York authority does indicate that damages for civil rights violations are not included in this category.").

Therefore, since Plaintiff was unable to seek damages in his state habeas proceeding, the principles of *res judicata* do not bar his § 1983 cause of action for unlawful arrest. *Accord Antonsen v. Ward*, 943 F.2d 198, 201 (2d Cir. 1991) ("Where 'formal barriers' to asserting a claim existed in the first forum it would be 'unfair to preclude [the plaintiff] from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.'" (quoting Restatement (Second) of Judgments § 26(1)(c) comment c (1982))); *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999) (holding that "the termination of the prior article 78 proceeding on the merits was not res judicata as to the section 1983 damage claims" and noting that "res judicata is inapplicable where the plaintiff 'was unable to . . . seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain . . . multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action . . . to seek that remedy or form of relief'" (quoting Restatement (Second) of Judgments § 26(1)(c))); *see Burgos*, 14 F.3d at 791 ("We do not see why the analysis in *Davidson* does not apply squarely in this case. Habeas petitions are very similar in nature and character to Article 78 proceedings.").

**B. Collateral Estoppel Precludes the Assertion of Plaintiff's § 1983 Unlawful Arrest Claim**

"Principles of collateral estoppel may bar relitigation in a subsequent civil rights action in federal court of an issue that was determined in a state court criminal proceeding. The federal court must, however, apply the collateral estoppel rules of the state which rendered the judgment." *Owens v. Treder*, 873 F.2d 604, 607 (2d Cir. 1989) (citation omitted). "Under New York law, the doctrine of issue preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (footnote omitted).

On August 23, 2016, Plaintiff, represented by counsel, participated in a preliminary parole violation hearing, during which the hearing officer determined that there was probable cause that Plaintiff had violated his conditions of release in an important respect. (Dkt. 5-1 at 314). A review of Plaintiff's August 30, 2016, petition for writ of habeas corpus reveals that Plaintiff challenged his detention on the grounds that P.O. VanDusen arrested him without a warrant. (*See id.* at 196). In his Decision and Order, Judge Dinolfo found that Plaintiff's "arrest without a Warrant is a technical violation at best, and not the grounds for a release from custody." (*Id.* at 327). Moreover, Judge Dinolfo affirmed the hearing officer's determination that there was probable cause that Plaintiff had violated his conditions of parole. (*Id.* at 328).

"Settled authority establishes that where, as here, a state court has determined that the challenged search warrant or warrantless seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action." *DeFranco v. Town of Irondequoit*, No. 06-CV-6442L, 2009 WL 2957813, at *4 (W.D.N.Y. Sept. 11, 2009) (collecting cases). "Courts have accorded preclusive effect to probable cause determinations made at preliminary revocation hearings." *Felix v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 16-CV-7978 (CS), 2018 WL 3542859, at *7 (S.D.N.Y. July 23, 2018) (collecting cases).

"Federal claims for false arrest and imprisonment brought via § 1983 rest on an individual's Fourth Amendment right to be 'free from unreasonable seizures, including arrest without probable cause,' and are 'substantially the same as a claim for false arrest under New York law.'" *Guadagni v. N.Y.C. Transit Auth.*, No. 08-CV-3163(CPS)(SMG), 2009 WL 1910953, at *4 (E.D.N.Y. June 30, 2009) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)), *aff'd*, 387 F. App'x 124 (2d Cir. 2010). "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *see Hoyos v. City of New York*, 999 F. Supp. 2d 375, 385 (E.D.N.Y. 2013) ("As to the fourth element, defendants' warrantless arrest of Hoyos is 'privileged' if the officers had probable cause to arrest him.").

The allegations set forth in Plaintiff's tenth cause of action mirror the arguments he asserted in the state habeas proceeding; to wit, P.O. VanDusen unlawfully arrested him without a warrant. (*See* Dkt. 1 at 145-46; Dkt. 5-1 at 196). However, the lawfulness of Plaintiff's arrest has already been upheld in the preliminary revocation hearing and the

state habeas proceeding based upon a finding of probable cause that Plaintiff had violated his conditions of parole. (Dkt. 5-2 at 314, 327-28); *see Felix*, 2018 WL 3542859, at *7 (applying collateral estoppel where the issue of "whether [the d]efendants had reasonable cause to believe [the p]laintiff violated his parole conditions . . . was an issue before the hearing officer at the preliminary revocation hearing"); *Bostic v. Harder*, No. 3:06-CV-540 TJM/DEP, 2009 WL 3165546, at *6 (N.D.N.Y. Sept. 25, 2009) ("[T]he determination by the administrative law judge at the preliminary parole revocation hearing finding that there was probable cause to believe that [the p]laintiff struck his wife such to violate one of [the p]laintiff's parole conditions is identical to the probable cause determination that is decisive of the false arrest claims asserted in Count I. The issue was necessarily decided and material in the preliminary parole revocation hearing, and [the p]laintiff, who was represented by counsel, had a full and fair opportunity to litigate the issue in the earlier action."); *Erwin v. Russi*, No. 97 CIV. 5818 HB, 1998 WL 474096, at *1, *5 (S.D.N.Y. Aug. 11, 1998) (applying collateral estoppel to the plaintiff's allegation that "no probable cause existed that he used cocaine" where the plaintiff was arrested and incarcerated on a parole violation for using cocaine and where he made the same argument before the state habeas corpus court, which "held that probable cause existed that the plaintiff used cocaine"); *see also Mitchell v. Hartnett*, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003) (applying collateral estoppel where the plaintiff "challenges the lawfulness of an arrest" and "the same issue, the lawfulness of [his] arrest, was the subject of the suppression hearing and underlies this § 1983 action").

Therefore, Plaintiff cannot assert a § 1983 cause of action for false arrest because the issue of whether Plaintiff's arrest was properly supported by probable cause was actually determined and necessarily decided by the hearing officer in the preliminary parole revocation proceeding and was then challenged and left undisturbed by the state habeas court, which denied his petition for habeas relief. Furthermore, Plaintiff was represented by counsel during the preliminary revocation hearing as well as during the state habeas proceeding, and there is nothing in the record to suggest that Plaintiff did not have a full and fair opportunity to litigate this issue. Accordingly, Plaintiff's tenth cause of action is dismissed.

## IV.    Plaintiff's Seventh Cause of Action is Dismissed

Defendants argue that Plaintiff's seventh cause of action should be dismissed because it asserts an Eighth Amendment claim for excessive force, even though "[a]n excessive force claim arising out of the arrest of a parolee by parole officers is addressed by the Fourth Amendment." (Dkt. 5-2 at 8). Neither the Supreme Court nor the Second Circuit has directly addressed whether a parolee's excessive force claim is more properly analyzed under the Fourth or the Eighth Amendment. *Towsley v. Frank*, No. 5:09-CV-23, 2010 WL 5394837, at *5 (D. Vt. Dec. 28, 2010) ("Neither the Supreme Court nor the Second Circuit has squarely decided whether a parolee—someone who is 'free' in the sense that he is not incarcerated, but who is also subject to an existing prison sentence if he violates parole—is protected by the Fourth or the Eighth Amendment's limitations on the government's use of force."). However, the consensus among the district courts in this Circuit strongly favors the application of Fourth Amendment principles. *See, e.g., Horace*

*v. Gibbs*, No. 14-CV-655S, 2017 WL 4344435, at *4 (W.D.N.Y. Sept. 29, 2017) ("Although Horace identifies the Eighth Amendment as the source of his excessive force claim, it in fact arises under the Fourth Amendment, because the excessive force is alleged to have occurred during a parolee's arrest for a parole violation." (collecting cases)); *Cox v. Fischer*, 248 F. Supp. 3d 471, 479 (S.D.N.Y. 2017) ("As several courts have recognized, a parolee's claim that he was subjected to excessive force in the course of an arrest for a parole violation arises under the Fourth Amendment, not the Eighth Amendment." (collecting cases)); *Towsley*, 2010 WL 5394837, at *5 (noting that "the weight of authority, including decisions from district courts in the Second Circuit, favors applying the Fourth Amendment standard" to excessive force claims brought by a parolee); *Turner v. White*, 443 F. Supp. 2d 288, 296 (E.D.N.Y. 2005) (noting that "[t]he status of a parolee who seeks to bring claims of excessive force against his parole officer is unsettled in this Circuit," but stating that those cases that "have held that constitutional claims by parolees are governed by an Eighth and Fourteenth Amendment analysis . . . appear to be contrary to the approach followed by district courts in this Circuit" (citing cases)). As one court succinctly explained, "when officers use force against a parolee they suspect of violating the conditions of his parole, they are effecting [sic] a 'seizure' of the parolee for committing a new offense, not a 'punishment' for committing the crime for which he was convicted." *Cox*, 248 F. Supp. 3d at 479; *see also Brown v. City of New York*, 798 F.3d 94, 101 n.10 (2d Cir. 2015) ("[A] claimed Fourth Amendment violation for using excessive force while making an arrest differs from a claimed Eighth Amendment violation for abusing a prisoner.").

The Court joins with the district court decisions in this Circuit that have concluded that a parolee's excessive force claims against his parole officers for conduct taking place during his period of parole are analyzed under the Fourth Amendment, not the Eighth Amendment. Although the Court would evaluate Plaintiff's seventh cause of action under Fourth Amendment principles, since Plaintiff has already alleged a Fourth Amendment cause of action arising out of the alleged unlawful seizure of his person within his sixth cause of action (Dkt. 1 at ¶ 122 ("The defendants use of force against Claimant was objectively unreasonable and a violation of 42 U.S.C. 1983, his federal 4th amendment right against unreasonable and excessive force."), the Court dismisses Plaintiff's seventh cause of action, *see Phillips v. City of Middletown*, No. 17-CV-5307 (CS), 2018 WL 4572971, at *3 (S.D.N.Y. Sept. 24, 2018) (analyzing an excessive force claim under the Fourth Amendment, and dismissing the plaintiff's Eighth Amendment claim, because the alleged excessive force occurred "during a home visit responding to a 911 call" instead of "a post-conviction situation," and his Fourteenth Amendment claim, "because 'the Fourth Amendment provides a more explicit textual source of constitutional protection'" (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007))); *Samuels v. Schultz*, No. 11-CV-6255, 2017 WL 1194376, at *4 (W.D.N.Y. Mar. 30, 2017) ("Since plaintiff's claim of excessive force arose in the context of an arrest, it is governed by the Fourth Amendment and not the Eighth Amendment. Accordingly, defendants' motion to dismiss plaintiff's claims that he was subject to excessive use of force in violation of the Eighth Amendment is granted." (citation omitted)); *Kuar v. Mawn*, No. 08-CV-4401 (JFB/ETB), 2011 WL 838911, at *6 (E.D.N.Y. Mar. 4, 2011) ("[I]nsofar as plaintiff's claims arise solely from

his arrest and are not based on any post-conviction conduct, the Court will analyze them under the Fourth Amendment only, and any claims arising under the Eighth Amendment are hereby dismissed.").

V.  **P.O. Jason is Not Terminated From This Action**

Lastly, to the extent Defendants argue that the claims asserted against P.O. Jason should be dismissed because Plaintiff has failed to sufficiently allege his personal involvement in any remaining cause of action (Dkt. 5-2 at 8-9), the Court disagrees. P.O. Jason conducted the initial arrest before Plaintiff was taken to the Division's offices. (Dkt. 1 at ¶ 20). In addition, it appears that Plaintiff alleges that P.O. Jason was involved in the body cavity search or was at least present during it. Plaintiff alleges that P.O. Jason assisted Plaintiff to urinate at the Division's offices when they first arrived, he told Plaintiff that the parole officers had received a telephone call informing them that Plaintiff was using his anal cavity to hide drugs, and P.O. Rusinko instructed P.O. Jason to watch Plaintiff immediately after the body cavity search concluded. (*Id.* at ¶¶ 38-40, 56). At least at the motion to dismiss stage, it cannot be said that P.O. Jason was not personally involved in the conduct underlying the alleged § 1983 abuse of process claim or the alleged Fourth Amendment violations set forth in Plaintiff's sixth cause of action. Therefore, Defendants' request that this Court terminate P.O. Jason from this action is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 5) is granted in part and denied in part. Plaintiff's first, second, third, fifth, eighth, ninth, and eleventh causes of action are dismissed without prejudice, Plaintiff's fourth cause of action is dismissed

without prejudice to the extent it alleges a state law claim for abuse of process, and Plaintiff's seventh and tenth causes of action are dismissed with prejudice. Defendants' motion is otherwise denied. Accordingly, Plaintiff's fourth cause of action, alleging a § 1983 claim for abuse of process, and his sixth cause of action, alleging a § 1983 claim for excessive force based upon the Fourth Amendment, may proceed as against P.O. Jason and P.O. Rusinko. The Clerk of Court is directed to terminate P.O. VanDusen from this action.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 8, 2019
Rochester, New York